IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ARGONAUT MIDWEST
INSURANCE COMPANY,

   Plaintiff,

    v.

MCNEILUS TRUCK AND
MANUFACTURING, INC.,

   Defendant.

CIVIL ACTION FILE
NO. 1:11-CV-3495-TWT

ORDER

This is a property damage action. It is before the Court on the Plaintiff's Motion for Summary Judgment as to Defendant's Affirmative Defenses [Doc. 26], and the Plaintiff's Motion for Summary Judgment as to Defendant's Amended Affirmative Defenses [Doc. 31]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment in its Favor as to Defendant's Affirmative Defenses is DENIED AS MOOT, and the Plaintiff's Motion for Summary Judgment in its Favor as to Defendant's Amended Affirmative Defenses is GRANTED.

I. Background

This case arises from an August 31, 2010, fire that destroyed a 2010 McNeilus front loading garbage truck. The truck was owned by Big Truck Rental, LLP

("BTR"), but was under lease from BTR to Green Sense LLC. Pursuant to its lease with BTR, Green Sense bore all risk of loss associated with the truck. The Plaintiff, Argonaut Midwest Insurance Company ("Argonaut"), provided insurance to Green Sense which covered the truck.

Green Sense experienced problems with the truck and took the truck to McNeilus for repair. McNeilus replaced the cracked hydraulic tube. After McNeilus completed its repairs, a Green Sense employee picked up the truck. The Green Sense driver soon returned to the McNeilus facility because of sweeping gauges in the cab of the truck, and thereafter drove the truck back to the Green Sense facility. Fifteen minutes after the truck was parked in the Green Sense yard, it caught fire and was totally destroyed. Pursuant to its contract of insurance with Green Sense, the Plaintiff indemnified Green Sense and its lessor in the amount of $198,061.81, for the loss of the truck. After paying the owner for the loss of the truck, Argonaut exercised its subrogation rights and filed this suit alleging that the Defendant failed to properly repair the truck.

The Plaintiff filed the Complaint in this Court on October 13, 2011 [Doc. 1]. The Complaint asserts two causes of action. Count I is for negligence and Count II is for breach of contract. The Plaintiff filed its Motion for Summary Judgment as to Defendant's Affirmative Defenses on May 11, 2012 [Doc. 26]. The Defendant

responded with its Motion to Amend the Answer on May 18, 2012 [Doc. 27]. The Court granted the Defendant's Motion on May 21, 2012 [Doc. 28]. The Defendant filed its Amended Answer on May 21, 2012 [Doc. 30]. The Amended Answer does not assert affirmative defenses of waiver and estoppel, failure to mitigate damages, or failure to meet or satisfy conditions precedent. Furthermore, the Defendant withdraws the affirmative defense of failure to join indispensable parties. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J as to Def.'s Am. Affirmative Defenses, at 9.) The Plaintiff filed its Motion for Summary Judgment as to Defendant's Amended Affirmative Defenses on May 29, 2012 [Doc. 31]. Therefore, the Plaintiff's Motion for Summary Judgment as to Defendant's Affirmative Defenses [Doc. 26] is denied as moot.

## II. Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond

the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

As an initial matter, the Plaintiff's Complaint states a claim upon which relief can be granted, so the First Defense in the Amended Answer fails. The remaining defenses that the Plaintiff challenges in its Motion and that are opposed by the Defendant are the Second Defense and the Third Defense.

### A. Second Defense

The Defendant pleads the affirmative defenses of contributory and comparative negligence. The Defendant argues that the Plaintiff's insured, Green Sense, is wholly or in part responsible for the damages at issue, and that any award should thereby be reduced in proportion to the percentage of fault attributable to Green Sense. Under Georgia law, if a plaintiff could have avoided the consequences to himself caused by the defendant's negligence by the exercise of ordinary care, he is not entitled to recover from the defendant, or is entitled to less than the full amount of damages. O.C.G.A. § 51-11-7. If Green Sense is fifty percent or more responsible for the damages claimed, the Plaintiff is not entitled to receive any damages. O.C.G.A. § 51-12-33(g). If Green Sense is less than fifty percent responsible for the damages, the Plaintiff's award of damages shall be reduced in proportion to Green Sense's

percentage of fault. O.C.G.A. § 51-12-33(a).

The Defendant contends that Green Sense was negligent in failing to reduce the risk of an electrical fire. First, the Defendant argues that Green Sense was negligent because the Defendant told Green Sense that the truck was having electrical problems and that Green Sense should take the truck to the Autocar repair facility for an evaluation of the chassis electrical system. Second, the Defendant contends that Green Sense was negligent because its driver did not disconnect the turn battery when he parked the truck even though he knew there was a possible electrical malfunction. The Defendant claims that these acts contributed to a fire caused by an electrical defect. Therefore, in order for Green Sense's negligence to have caused the fire, an electrical defect must have caused the fire.

However, there is no evidence in the record that an electrical defect caused the fire. The Plaintiff's expert, Loren Griswold, found that the hydraulic tube leaked hydraulic fluid, which was then ignited by hot engine surfaces. The Defendant has not produced an expert that will testify that there was an electrical defect which caused the fire. The Defendant merely speculates (with its corporate representative who has not been designated as an expert) that an electrical defect caused the fire. (Bartlett Dep. at 118, 151.) This type of speculation is not sufficient to defeat summary judgment. Hughes v. Stryker Corp., 423 Fed. Appx. 878, 882 (11th Cir. 2011);

Adamson v. General Elec. Co., 303 Ga. App. 741, 746-47 (2010) ("Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment.").

    B.    Third Defense

The Defendant pleads the affirmative defense of apportionment of fault. Pursuant to O.C.G.A. § 51-12-33, any award must be reduced in proportion to the percentage of fault attributable to any other parties or nonparties. "Negligence or fault of a nonparty shall be considered if...a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault." O.C.G.A. § 51-12-33(d)(1). The Defendant argues that Autocar, the manufacturer of the truck, and Linfor, the manufacturer of the hydraulic tube, may also be at fault.

At the summary judgment stage, the Plaintiff, as the moving party, has the initial burden of piercing the Defendant's affirmative defense. Union Carbide Corp. v. Fields, 315 Ga. App. 554, 557 (2012), citing Clay v. Oxendine, 285 Ga. App. 50, 56 (2007). The burden then shifts to the Defendant to set forth facts showing that there is a genuine issue for trial. Id. The Plaintiff met this initial burden by presenting expert testimony that McNeilus' faulty repair was the sole reason for the fire. The Defendant has not produced any evidence that AutoCar manufactured a faulty chassis electrical system on the specific truck in question. Furthermore, as

stated above, there is no evidence that an electrical defect caused the fire. The Defendant has not produced evidence creating a jury question as to Autocar's fault in this case. "[T]he fault of a nonparty cannot be considered for the purposes of apportioning damages without some competent evidence that the nonparty in fact 'contributed to the alleged injury or damages.'" Union Carbide, 315 Ga. App. at 559, quoting O.C.G.A. § 51-12-33(c).

Furthermore, the Defendant has not produced any evidence that the hydraulic tube manufactured by Linfor was defective. McNeilus' corporate representative, William Bartlett, testified that he had no reason to believe that the hydraulic tube supplied by Linfor was defective. (Bartlett Dep. at 171.) "[A]lthough there is no precedent from the Eleventh Circuit on this issue, other jurisdictions have held that a corporate representative's Rule 30(b)(6) deposition testimony is not binding in the sense of a judicial admission; and thus contrary testimony may be offered." Trunnell v. Advance Stores Co. Inc., No. 1:11-CV-38, 2012 WL 629527, at *2 (N.D. Fla. Feb. 28, 2012). However, the Defendant's sole purported evidence of a defectively manufactured hydraulic tube is a characterization of the testimony of the Plaintiff's expert, Loren Griswold, that the expert himself states is inaccurate. The Defendant argues that Griswold stated that the leak occurred because the pipe was not properly secured to the T-fitting, and that McNeilus did not attach the fork pipe to the T-fitting

but rather the pipe was silver brazed to the T-fitting by Linfor. (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. as to Def.'s Am. Affirmative Defenses, at 13-14.) Griswold testified, however, that he believes that McNeilus damaged the T-fitting during installation, and did not conclude that the pipe was defectively manufactured. (Griswold Aff. ¶¶ 4-7.) The Defendant has not produced evidence creating a jury question as to Linfor's fault in this case.

## IV. Conclusion

For the reasons set forth above, the Court DENIES AS MOOT the Plaintiff's Motion for Summary Judgment in its Favor as to Defendant's Affirmative Defenses [Doc. 26], and GRANTS the Plaintiff's Motion for Summary Judgment in its Favor as to Defendant's Amended Affirmative Defenses [Doc. 31].

SO ORDERED, this 8 day of February, 2013.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge